METHODIST EPISCOPAL CHURCH IN CENTER OF STANFORD v. HEBARD et al.

(Supreme Court, Appellate Division, Second Department. April 26, 1898.)

1. WILLS—DEMONSTRATIVE LEGACY.
   A legacy of money is demonstrative when the gift is so made as clearly to show the testator's intention that the legatee shall certainly receive the amount bequeathed.

2. SAME—CONSTRUCTION—CHARGES ON ESTATE.
   A will contained a so-called "sixth section," disposing of the proceeds of a certain farm, and consisting of six clauses, each providing for a separate legacy. The "eighth section" provided that, "if the proceeds of my said farm and my other estate should prove insufficient to pay all the legacies * * * in full, then * * * the legacies given * * * by the first, second, third, and fourth clauses of the sixth section * * * shall be paid * * * in full, and the remaining legacies * * * proportionately abated." Held, that the intent was to make the first four clauses chargeable, if need be, upon the general estate, but to leave the fifth and sixth chargeable only upon the balance of the farm fund, if any, after satisfying therefrom the four preceding clauses.

Appeal from special term, Dutchess county.

Action by the Methodist Episcopal Church in the Center of Stanford against Newton Hebard and Nathan C. Sackett, executors of Sarah S. Hunting, deceased. From a judgment in favor of defendants, plaintiff appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. M. & G. Card, for appellant.

Allison Butts, for respondents.

WILLARD BARTLETT, J. This action is brought by the plaintiff as a legatee to obtain a construction of the will of Sarah S. Hunting, of which the defendants are the executors. The will, which was made on November 28, 1895, contains 10 numbered sections or paragraphs. By the first, second, third, fourth, and fifth sections, the testatrix gives specific legacies, or makes specific devises, to the persons respectively named therein. The sixth section reads as follows:

"Sixth. I give, bequeath, and devise unto my executors hereinafter named the farm in Stanford which I now own, containing about 192 acres, in trust for the following uses and purposes, and none other, viz.: To sell and dispose of the same at any time within ten years after my decease, at their discretion, entire or in parcels, for cash or on credit, at public or private sale, as they may deem best (and until sold, to rent or use the same for the benefit of my estate), giving to my said executors or to the survivor of them full power and authority to bargain, contract, and convey the same to the purchaser or purchasers thereof as fully and entirely as I might do if living; and from the proceeds thereof, when sold, to pay—First. To the trustees or treasurer of the Island Cemetery, in Amonia, N. Y., the sum of one hundred dollars as a fund, the interest of which shall be used each year in caring for the plot in·said cemetery owned by my sister and myself, in which our families may be buried. Second. The sum of two thousand dollars, or so much thereof as they may deem necessary, for a monument and smaller marking stones, and the general shaping and laying out of said cemetery plot, to be retained by said executors, and expended under their own general direction and supervision, the remainder of said two thousand dollars, if any, to revert to this farm fund. Third. To pay over to the trustees of the Methodist Episcopal Church at Bangall, N. Y., the sum of one thousand dollars, to be kept by said trustees as a fund, the net annual income of which shall be applied each year towards the payment of the pastor's salary. Fourth. To retain in their hands and invest and reinvest safely the sum of seven hundred dollars, and to pay over the net annual income thereof each year to Laura Jessie Halsted, until Henry Townsend Rundell shall become fourteen years of age; whereupon they are to use thereafter, in their discretion, the annual income, and so much of the principal and in such sums as they may deem best, for the purpose of aiding the said Henry Townsend Rundell in his efforts to obtain a thorough education. If he should die before the same is expended, or should he decline the use of said money for that especial purpose, then I direct said executors, or the survivor of them, to divide said sum, or what remains thereof, equally between Millicent Rundell and Elizabeth Center Merry. Fifth. To pay the further sum of one thousand dollars to the trustees of the said Methodist Episcopal Church at Bangall, N. Y., as a parsonage fund, to be used either in helping to buy or build a parsonage, or to pay any mortgage debt upon a parsonage, if they shall already have one, or to be added to the general fund of said church, should said church already have a parsonage fully paid for. Sixth. Should there still remain any portion of the proceeds of said farm unexpended as above in the hands of my executors, then I give and bequeath therefrom the further sum of five hundred dollars to the trustees of the said Methodist Episcopal Church at Bangall, to be added to its general fund."

The seventh section contains two legacies, one of $400, and one of $500, to two persons named therein. Then follows the eighth section, in these words:

"Eighth. It is my will and express direction that, if the proceeds of my said farm and my other estate should prove insufficient to pay all the legacies hereinbefore given in full, then, and in that case, the legacies given in and by the first five sections of this will, and in and by the first, second, third, and fourth clauses of the sixth section of this will, shall be paid or set aside and retained in full, and the remaining legacies shall be proportionately abated."

The ninth section disposes of the residue and remainder of the estate of the testatrix, and the tenth section merely dispenses with the giving of any bond by the executors, who are named in the next and concluding paragraph of the will.

Upon the trial, proof was given showing that the farm mentioned in the sixth section was worth about $4,000, but was subject to a mortgage of $1,500. The six legacies given by the sixth section aggregate $5,300, so that apparently this farm fund will not suffice to pay them all, or even the first, second, third, and fourth legacies of that section, which together amount to $3,800. The value of the personal estate of the testatrix was shown to be nearly $11,000.

The plaintiff contends that it was not the intention of the testatrix that the legacies bequeathed in the sixth section should be payable only out of the proceeds of the farm therein directed to be sold, but that the effect of the eighth section was to make all the six legacies of the sixth section chargeable against the whole estate, in the event that the farm fund should be insufficient to pay them, the first four to be paid in full, and the last two in full, if the whole estate was sufficient. On the other hand, the executors insist that the farm moneys only can be applied to the payment of the legacies given by the sixth section, and that, if it prove insufficient to pay all six of them, the fifth and sixth legacies therein mentioned must suffer abatement, while the eighth section does not in any contingency render any of the legacies of the sixth section chargeable against the general estate. At special term the learned trial judge held with the defendants, and the plaintiff has appealed.

The impression made upon my mind by the language of this will calls for a different construction in some respects from that adopted by the court below. Standing alone, and without the qualifying and enlarging effect of the eighth section, the sixth section would undoubtedly make the proceeds of the farm the sole fund from which any of the legacies mentioned in that section could be paid. But it was apparently to do away with this limitation, so far as the first four legacies of the sixth section were concerned, that the eighth section was inserted. In it the testatrix provides "that, if the proceeds of my said farm and my other estate should prove insufficient to pay all the legacies hereinbefore given in full, then, and in that case, the legacies given in and by the first five sections of this will, and in and by the first, second, third, and fourth clauses of the sixth section of this will, shall be paid or set aside and retained in full, and the remaining legacies shall be proportionately abated." Although the first five sections of the will are here mentioned, it is obvious that this eighth section can have no effect upon them, for the gifts which they bestow are gifts of specific real or personal property, and cannot suffer abatement. The eighth section, therefore, cannot possibly relate to any other legacies than those mentioned in the sixth section and the two money legacies given by the seventh. The question is, how does it affect those legacies? Does it merely give the first, second, third, and fourth legacies of the sixth section a preference over the fifth and

sixth legacies of that section to payment out of the farm fund, without recourse to the general estate, as was held at special term, or does it require that the said first four legacies shall be paid out of the other property of the testatrix, if the farm fund is not large enough?

In my opinion, the effect of the eighth section was to make each of the first four gifts in the sixth section a demonstrative legacy, and thus chargeable, if need be, upon the general estate of the testatrix. A legacy of money is demonstrative when the gift is so made as clearly to show the testator's intention that the legatee shall certainly receive the amount bequeathed. Watrous v. Smith, 7 Hun, 544, and cases there cited. Such an intention seems to be most distinctly manifested by the language of the eighth section, where Mrs. Hunting directs the payment of the particular legacies therein specified, "if the proceeds of my said farm and my other estate should prove insufficient to pay all the legacies hereinbefore given in full." The use of the phrase "and my other estate" indicates that she contemplated the possible application of some of her property, outside the proceeds of the farm, to the payment of some of the legacies mentioned in the sixth section. It is unreasonable to suppose that this phrase relates solely to the money necessary to pay the two legacies of the seventh section, for they amounted to only $900, and, with personal property in excess of $10,000, the testatrix could hardly have assumed the occurrence of any contingency which would render her general estate unable to pay these two legacies. But I think that it is with reference to the first four legacies alone, of the six legacies mentioned in the sixth section, that the will shows that clear, separate, and independent intention that the money shall go to the legatee at all events which is necessary to constitute a demonstrative legacy. Pierrepont v. Edwards, 25 N. Y. 128. The language of the eighth section indicates an extreme solicitude that these first four legacies shall be paid, and, as it seems to me, is plainly expressive of the wish of the testatrix that resort shall be had to her general estate if necessary to pay them; but I find in it no evidence of any similar sentiment or intent in reference to the fifth and sixth legacies of the sixth section. The sixth legacy, by its very terms, is not to be paid to the plaintiff unless the farm fund shall suffice to pay the same after the liquidation of the other legacies. The eighth section was not intended to modify this condition, nor do I think that its purpose was to make the fifth legacy a charge upon the general estate. In the view taken, the first, second, third, and fourth legacies given by the sixth section of the will are to be paid out of the farm fund so far as it will suffice to pay them; if there is a deficiency, the general estate must make it up. The fifth and sixth legacies are payable only out of so much of the farm fund, if any, as may remain after paying the first four legacies of the sixth section. In no event are they to be charged against the general estate.

Except in these respects, the judgment of the special term was correct, and, after being modified as herein indicated, it should be affirmed. All concur.